IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                         No. 12 CR 0413 MV

NEAL D. KASPER, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## ON OBJECTIONS TO THE PRESENTENCE REPORTS

**THIS MATTER** is before the Court on objections made to the presentence reports and revised presentence reports for Defendants Neal D. Kasper, Bradley G. Christiansen, and Tiffany White a/k/a Tiffany Kasper. First, the Court overrules Defendants Kasper and Christiansen's objections to the four-level enhancement for being an organizer or leader of criminal activity under U.S.S.G. § 3B1.1(a) [Docs. 209, 263]. Next, the Court considers the objections made by the government and Defendant White to the use of U.S.S.G. § 2C1.1 in the Revised Presentence Reports for Defendants White and Kasper, [Docs. 247, 248], and the objections made by the government and Defendant Christiansen to the use of § 2C1.1 in the Presentence Report for Defendant Christiansen. [Docs. 242, 263]. The United States Probation Office ("Probation") responded to these objections and took the position that § 2C1.1 is the applicable guideline provision for each defendant. [Docs. 255, 262, 261, 267]. The Court, having considered the objections and the relevant law, and being otherwise fully informed, finds that the objections to using § 2C1.1 are well taken and will be sustained. Accordingly, the Court goes on to consider Defendant Kasper's objections to the two-level enhancement for abuse of position of trust under U.S.S.G. § 3B1.3, as applied to both Kasper and Christiansen, and overrules the objections.

1

Finally, the Court considers all parties' objections to the loss amount recommended in the presentence reports, sustains the objections, and orders that Defendants' offense levels under § 2B1.1 be based on the amount of kickback monies each of them received.

## BACKGROUND

This case involves officers of a private construction company, Laguna Construction Company (LCC), which received sizeable contracts with the U.S. Department of Defense to execute construction and rebuilding projects in Iraq. As LCC's President, Kasper was in charge of all operations, and it remains disputed to what extent Kasper was aware of or closely involved in day to day operations. As LCC's Vice President, Christiansen handled all day to day management responsibilities over the company's wartime reconstruction projects in Iraq. White, having embarked on a romantic relationship with Kasper, was brought into the position of Contract Compliance Manager, but was then directed by both Kasper and Christiansen to hand over all bids to Christiansen. In sum, notwithstanding varying degrees of culpability, the Defendants together created and executed a kickback scheme with their preferred subcontractors in the region, receiving a total of approximately $1.54 million in kickbacks. This scheme was in violation of procurement regulations. As the Defense Contract Management Agency (DCMA) explained in its victim impact statement, by circumventing the procurement regulations and awarding subcontracts without competition, in order to receive kickbacks, some of these subcontracts were being awarded at inflated prices, in such a way that it hindered the Department of Defense's ability to ensure that these projects are completed well and efficiently.

On February 28, 2012, a 91-count Indictment was filed naming Neal D. Kasper, Tiffany White a/k/a Tiffany Kasper, and Bradley G. Christiansen, and others as defendants. On July 2, 2013, Christiansen pled guilty to Count 1, Conspiracy to Defraud the United States by Providing,

Soliciting, and Accepting Kickbacks, in violation of 18 U.S.C. § 371; Count 76, Soliciting and Receiving Kickbacks and Aiding and Abetting, in violation of 41 U.S.C. §§ 8702 and 8707; and Count 91, Income Tax Evasion, in violation of 26 U.S.C. § 7201.  However, Christiansen entered an Amended Plea Agreement on June 2, 2017, to Count 1 of the Amended Information, Wire Fraud, in violation of 18 U.S.C. § 1343; Count 2 of the Amended Information, Conspiracy to Defraud the United States by Providing, Soliciting, and Accepting Kickbacks, in violation of 18 U.S.C. § 371; and Count 76 of the Indictment, Soliciting and Receiving Kickbacks and Aiding and Abetting, in violation of 41 U.S.C. §§ 8702 and 8707.  [Doc. 232].  On February 26, 2016, Kasper pled guilty to Count 11, Wire Fraud and Aiding and Abetting, in violation of 18 U.S.C. § 1343; and Count 16, Conspiracy to Provide, Solicit, and Accept Kickbacks, in violation of 18 U.S.C. § 371.  Also on February 26, 2016, White pled guilty to an Information Charging Count 1, Filing False Tax Return, in violation of 26 U.S.C. § 7206(1); and Count 11 of the Superseding Indictment, Wire Fraud and Aiding and Abetting, in violation of 18 U.S.C. § 1343.

     Presentence Investigation Reports were filed for Kasper and White on October 26, 2016 [Docs. 191, 193].  Consistent with the agreements reached between the parties under Fed. R. Crim. P. 11(c)(1)(B) and 11(c)(1)(C), respectively, these Presentence Reports applied U.S.S.G. § 2B1.1 to the defendants' violations of 18 U.S.C. §§ 371 and 1343.  [Docs. 191 ¶ 46; 193 ¶ 41]. However, the Presentence Report filed for Christiansen on May 18, 2017 applied U.S.S.G. § 2C1.1 to Christiansen's violation of 18 U.S.C. § 371.  [Doc. 223 ¶ 39].  After Christiansen pled guilty to an Amended Information pursuant to an Amended Plea Agreement, an amended Presentence Report was filed that continued to apply § 2C1.1 to Christiansen's violation of 18 U.S.C. § 371.  [Doc. 256 ¶ 41].  On June 26 and July 12, 2017, Amended Presentence Reports

were filed for White and Kasper, respectively, stating that "the guideline for a violation of 18 U.S.C. § 1343 is U.S.S.G. § 2C1.1." [Docs. 245 ¶ 51; 239-1 ¶ 48].

## DISCUSSION

### I. The Court will apply the four-level enhancement under U.S.S.G. § 3B1.1 for Defendants Kasper and Christiansen.

Defendants Kasper and Christiansen each object to the four-level enhancement for being an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. [Docs. 209, 263]. The Court overrules these objections. As Probation explains,

> Paragraph 25 of the revised presentence report [for Christiansen] reflects the defendant [Christiansen] took advantage of his high-level, decision-making position to initiate with Neal Kasper the kickback and wire fraud schemes involved in this case. It further points out he and Kasper had the means and opportunity to foster a culture at LCC that made these schemes acceptable. Moreover, the defendant [Christiansen] and Kasper directed Tiffany White, Ramzi Snobar, Yacoub N.Y. Snobar, Mustapha Fiesal Ahmad, and others in these schemes. Based on these details, not only did this case involve at least five participants, it was also extensive, having involved two different criminal schemes that occurred over a number of years both in the United States and during wartime in the Middle East.

[Doc. 267 at 1-2]. Furthermore, Application Note 4 states that more than one person can qualify as leader or organizer of a criminal conspiracy, and the government is in agreement that while Christiansen shouldered most of the contracting responsibilities in Iraq, Kasper had a leadership role in the conspiracy domestically, including the circumstances of hiring White as Contract Compliance Manager, the way Kasper insulated himself from the illegal conduct overseas, the fact that it was White who received the first kickback payment, and the ledger found in Kasper's LCC office containing plans for legitimizing kickback monies received. [Doc. 219 at 3-8]. The Court is satisfied that both Defendants were organizers or leaders in a kickbacks conspiracy involving more than five individuals. The four-level enhancement will apply.

**II.     U.S.S.G. § 2B1.1 is the applicable guideline for the instant offenses.**

In order to determine the applicable guideline for a particular offense, courts start by "(1) identifying the charge from the indictment and jury instructions, (2) finding the substantive offense in the guidelines' statutory index, and (3) finding the applicable guideline range." *United States v. Kupfer*, 797 F.3d 1233, 1244 (10th Cir. 2015) (citing U.S.S.G. § 1B1.2).  The Court finds that with respect to all three Defendants, § 2B1.1, not § 2C1.1, is the applicable guideline.  The crux of the Court's decision rests on its finding that Defendants' crimes did not interfere with government functions.

The Court will use Defendant Christiansen for its analysis, which results in the same outcome for all three Defendants.  Christiansen has pled guilty to wire fraud, 18 U.S.C. § 1343, conspiracy to provide, solicit and accept kickbacks, 18 U.S.C. § 371, and soliciting and receiving kickbacks, 41 U.S.C. § 8702.  The presentence report correctly groups all three counts together for guideline calculation purposes.  U.S.S.G. § 3D1.2(b).  The guidelines' statutory index lists both §§ 2B1.1 and 2C1.1 for wire fraud, and § 2B4.1 for soliciting and receiving kickbacks.  However, ¶ 41 of Christiansen's revised presentence report looks to the statutory index for the conspiracy conviction.  The statutory index for 18 U.S.C. § 371 lists "2A1.5, 2C1.1 (if conspiracy to defraud by interference with governmental functions), 2T1.9, 2K2.1 (if a conspiracy to violate 18 U.S.C. § 924(c)), 2X1.1."  The revised presentence report applies § 2C1.1, stating that the conspiracy violation "involve[ed] a kickback scheme that interferes with governmental functions, such as undermining and/or damaging federal procurement and contract administration processes."  [Doc. 256 ¶ 41].  All parties filed objections to the recommendation that § 2C1.1 ought to apply instead of § 2B1.1.  *See* Docs. 203, 242, 247, 248, 263.

"When more than one guideline section is listed, the statutory index instructs the court to 'use the guideline most appropriate for the offense conduct charged in the count of which the defendant was convicted." *Kupfer*, 797 F.3d at 1245 (quoted authority omitted). In particular, "[w]hen the conviction involves a conspiracy, the court must 'refer to § 2X1.1 (Attempt, Solicitation, or Conspiracy) as well as the guideline referenced in the Statutory Index for the substantive offense." *Id*. § 2X1.1 is a "catch-all provision that instructs courts to apply a more specific guideline section if the conspiracy is expressly covered by that section. *Id*.

The Court finds that § 2C1.1 does not cover this conspiracy. § 2C1.1 applies to "offering, giving, soliciting, or receiving a bribe; extortion under color of official right; fraud involving the deprivation of the intangible right to honest services of public officials; conspiracy to defraud by interference with government functions." Application Note 1 to § 2C1.1 notes that the term "public official" is to be construed broadly and may include individuals who do not formally hold a public office or government employment:

> (E) An individual who, although not otherwise covered by subdivisions (A) through (D); (i) is in a position of public trust with official responsibility for carrying out a government program or policy; (ii) acts under color of law or official right; or (iii) participates so substantially in government operations as to possess de facto authority to make governmental decisions (*e.g.*, which may include a leader of a state or local political party who acts in the manner described in this subdivision).

In its responses to the parties' objections, Probation takes the position that "the defendant's admissions establish he conspired to defraud the United States by interfering with, and circumventing, government functions related to the awarding of subcontracts in accordance with federal acquisition regulations." [Doc. 255 at 2]. *See also* Doc. 267. The Court does not agree that this conspiracy is covered by Application Note 1(E) of § 2C1.1. LCC was awarded construction contracts, which were subject to certain fair competition rules imposed by the Department of Defense, but Defendants in awarding subcontracts and overseeing the

construction projects were not carrying out a government program or policy, acting under the color of law, or making governmental decisions.

In *United States v. Cantrell*, 617 F.3d 919 (7th Cir. 2010), the defendant operated the same basic scheme of using his position to steer contracts to a third party in exchange for kickbacks. The court applied § 2C1.1 because Cantrell was a trustee for the local township, or collection of nearby cities, and it was through this role that Cantrell was able to steer contracts towards his intended third party. *Id*. at 921 n.2. By comparison, Defendants carried out their kickbacks scheme as officers and employees of a private company, LCC.

In *United States v. Wilson*, 453 Fed. Appx. 498 (5th Cir. 2011), the defendant was employed by the school board in the maintenance department and was the supervisor of the school board's heating, ventilation and air conditioning (HVAC) systems. In this role, the defendant had access to the bids for HVAC contracts and would provide one of the bidders with information about the competitors' bids, allowing the third party to make lower bids, obtain the contracts, and provide kickback payments to the defendant. On appeal, the defendant argued that § 2C1.1 should not apply because he is not a public official. The Fifth Circuit ruled that although the defendant was a relatively low level employee, because he had access to information about the bids as well as the ability to "certify that an emergency existed and that units needed to be changed out on an emergency basis," the defendant had discretion over the use of public funds and was therefore a public official under § 2C1.1. *Id*. at 506. Although Defendant Christiansen similarly had access to the bids and provided information about competitors' bids to a third party in order to ensure that third party would receive the subcontract, Christiansen used his position as Vice President of LCC, the general contractor for the project, to circumvent the project's fair procurement requirements. Christiansen was not

7

acting in a position of authority to carry out a government program, or acting under the color of law, or making governmental decisions.

In *United States v. Whiteford*, 676 F.3d 348 (3rd Cir. 2012), the defendants were Army Reserve Officers acting as general contractors for rebuilding projects in Iraq, and they were considered public officials under § 2C1.1.  The defendant officers were deployed to Iraq to work for the Coalition Provisional Authority (CPA), or the temporary government body set up in Iraq by the members of the Coalition Forces to carry out humanitarian programs and reconstruction projects.  *Id*. at 352.  The CPA staff was made up of military service members and civilian employees from the governments of the coalition members.  CPA employees were bound by rules that were to carry the force of law in Iraq, including rules requiring competitive bidding and preventing employees from using their "public office for private gain."  *Id*.  The defendants had responsibilities for overseeing reconstruction projects, including supervising staff, managing project budgets, and facilitating payments from the CPA to its contractors.  *Id*. at 353.  Along with several other individuals, the defendants played a role in a conspiracy to steer construction contracts to an American businessman who, through a multi-step scheme, provided kickbacks to defendants and others in the conspiracy.  *Id*. at 353-54.  The defendants were each convicted under 18 U.S.C. § 371.  Both defendants argued that they were not acting as public officials, and the court rejected their arguments in light of their roles at CPA.  *Id*. at 365.

The Court acknowledges the logical appeal of the argument that because the Department of Defense has itself, through the CPA, served in the role of general contractor in reconstruction projects in Iraq, Defendants in the instant case should be seen as performing a government function.  However, the Court rejects this argument out of concern for the unusual and unique circumstances of the CPA.  Upon entering into the contracts with the Department of Defense,

8

LCC was subject to competitive bidding requirements imposed by the Department of Defense, but the Court is reluctant to view these obligations as analogous to the duties that a private company enters into when it contracts to perform a function that is usually performed by the government directly and that, when performed by the government, is subject to constitutional constraints. *See, e.g.*, *United States v. Dodd*, 770 F.3d 306 (4th Cir. 2014) (applying § 2C1.1 to bribery of private correctional officers acting under the authority of the Federal Bureau of Prisons). In other words, Defendants had contractual obligations to the Department of Defense, but in awarding subcontracts and overseeing the construction projects were not carrying out a government policy or program, acting under the color of law, or making governmental decisions.

In sum, although the schemes in *Cantrell*, *Wilson*, and *Whiteford* similarly circumvented the competitive bidding process in order to award contracts to specific third parties, Defendants in the instant case awarded subcontracts in their role as general contractor, not as agents of a government entity or program. Defendants' decisions in awarding subcontracts did involve government funds, but these decisions were not government decisions. Although LCC was awarded federal contracts subject to specific provisions regarding the procurement of subcontracts, LCC did not step into a government function by entering into these contracts. LCC was merely contracted by the Department of Defense to perform rebuilding projects, and awarding subcontracts is a routine aspect of being a general contractor.

Accordingly, the Court shall apply § 2X1.1 to Defendants' conspiracy convictions under 18 U.S.C. § 371. § 2X1.1 directs the Court to apply the base offense level from the guideline for the substantive offense, which is § 2B4.1 for soliciting and receiving kickbacks. However, the offense level under § 2B4.1 is lower than the offense level under § 2B1.1. Therefore, the Court shall apply § 2B1.1 for Defendants' wire fraud convictions under 18 U.S.C. § 1343.

### III. The Court will apply the two-level enhancement under U.S.S.G. § 3B1.3 for Defendants Kasper and Christiansen.

Having ruled that § 2B1.1 is the appropriate guideline, the Court considers Defendants Kasper and Christiansen's objections to application of the two-level enhancement for Abuse of Position of Trust or Use of Special Skill under § 3B1.3. [Docs. 209 at 14; 263[1]]. The Court finds that this enhancement is appropriate. Application Note 1 explains that

> [A] position of public or private trust [is] characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (*e.g.*, by making the detection of the offense or the defendant's responsibility for the offense more difficult).

As LCC's President and Vice President, respectively, Kasper and Christiansen were both in positions of private trust because they had substantial discretion in the company's operations and in dictating the company's culture. Both Defendants used their positions to facilitate the kickbacks conspiracy, in particular, to coax White into abdicating her duties as Contract Compliance Manager and allowing Christiansen to take over the process of awarding subcontracts. The Court will apply the two-level enhancement under § 3B1.3 to Defendants Kasper and Christiansen.

### IV. The Court will apply the amount of kickback monies each Defendant received as the appropriate loss amount under § 2B1.1.

Having ruled that the Court will apply § 2B1.1, the parties also object to the presentence reports' calculations of the amount of loss used to calculate the offense level. The full $1,725,533.22 amount that the Department of Defense paid to the defendants clearly is not an appropriate estimation of the government's loss. § 2B1.1 Application Note 3(V)(II) provides

---

[1] Defendant Christiansen does not explicitly object to this enhancement, but the Court will infer an objection because Christiansen objected to the use of § 2C1.1.

10

that in procurement fraud cases, loss may include "the reasonably foreseeable administrative costs to the government and other participants of repeating or correcting the procurement action affected, plus any increased costs to procure the product or service involved that was reasonably foreseeable." However, unfortunately in this case the government has not asserted "a loss based on underperformance on the awarded contracts or inflated prices on the contracts." [Doc. 202 at 12]. Part of the explanation for the difficulty in estimating the government's loss in this case is the evidence indicating that some subcontracts were indeed awarded to the lowest bidder, while others were not. The Tenth Circuit has explained that "[t]he defendant's gain may be used only as an 'alternate estimate' of that loss; it may not support an enhancement on its own if there is no actual or intended loss to the victims." *United States v. Galloway*, 509 F.3d 1246, 1252 (10th Cir. 2007).

The Court has insufficient information to even ascertain whether actual loss occurred. Accordingly, the Court will use the amounts stipulated by the Defendants, i.e. the amount of kickback monies each Defendant received, as the loss amount to determine the offense level under § 2B1.1. Accordingly, the parties' objections to Probation's recommendation on this issue are sustained.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Kasper and Christiansen's objection to the four-level enhancement for being an organizer or leader of criminal activity under § 3B1.1(a) is OVERRULED. Defendants Kasper, Christiansen and White's objections to application of § 2C1.1 is SUSTAINED. Defendants Kasper and Christiansen's objections to the two-level enhancement for abuse of public or private trust under § 3B1.3 is OVERRULED. Defendants Kasper, Christiansen, and White's objections to using the total amount of kickbacks

for loss amount is SUSTAINED, and the Court will use the amounts stipulated by the Defendants, i.e. the amount of kickback monies each Defendant received, as the loss amount to determine the offense level under § 2B1.1.

Dated this 30th day of March, 2018.

_____
**MARTHA VAZQUEZ**
**UNITED STATES DISTRICT JUDGE**